**In re LISTIE QUEMAHONING COAL CO.**
**No. 13868.**

District Court, W. D. Pennsylvania.
July 29, 1938.

Leland W. Walker, of Somerset, Pa., referee.

H. E. Hackney, Chas. Denby, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for receiver of Citizens Nat. Bank.

Higbee, Lewellyn & Higbee, of Uniontown, Pa., for Bondholders Committee.

## SCHOONMAKER, District Judge.

This case comes to the court on petition of George H. Smith, Receiver of the Citizens National Bank of Connellsville, Pennsylvania, to review the following order of the Referee in Bankruptcy:

"And now, April 1st, 1931, the Referee after a full hearing and after due consideration of argument by Counsel for the Receiver of the Citizens National Bank of Connellsville; directs the Trustee, Elmer O. Long, to deliver the deed for the bankrupts premises situate in Somerset Township, Somerset County, Pennsylvania to the Committee for the bond holders who entered into the agreement, and which Committee purchased the same at the Trustees' sale and to take from the said Committee, its receipt for the dividend for 38 bonds of the denomination of $1,000,000 each, the equitable interest in said bonds being held by the Citizens National Bank of Connellsville, of which institution George H. Smith is the Receiver; and to apply the same on the purchase price of the property. The dividend found by the Referee on each $1,-000. bond being $321.65 or a total credit of $12,222.70 on the aforesaid purchase price."

The facts on which this order was based are stated in the referee's certificate, and parties in interest have agreed in writing that the questions presented in the petition for review be decided on the facts thus stated. These facts may be briefly summarized as follows:

The bankrupt coal company owned real estate subject to a mortgage to secure bonds in the principal sum of $250,000, of which there were outstanding at the date of bankruptcy, bonds totalling $157,000.

The Bank owned $38,000 par value of these bonds. On February 21, 1928, a number of bondholders, including the Bank, entered into a Bondholders' Agreement, whereby they appointed a committee to represent them in the protection of their bonds, and for that purpose sold, assigned, transferred, and set over to the Committee the bonds held by them respectively, and authorized the Committee, if necessary, to acquire title to the property, subject to the lien of the mortgage. The referee made an order directing the Trustee to sell this real estate at public sale, offering the same first for sale subject to the lien of the mortgage, and then discharged of the lien of the mortgage. At the sale on June 22, 1928, no bids were received for the property subject to the lien of the mortgage; and it was then offered for sale free and discharged from the lien of the mortgage and sold to George K. Brennan, acting for the Bondholders' Committee, for $66,000, which sale was confirmed absolutely. In order to pay the costs of sale, certain wage-claims, taxes, and other items preferred in distribution, the Committee, on February 21, 1928, made an assessment of five per cent on the par value of the bonds owned by the parties to the Bondholders' agreement. On December 17, 1929, another assessment was made by the Committee. Both these assessments were paid by the Bank on the par value of its bonds. In addition, the Bank paid $965.06 representing one-half of the county and road taxes on the mortgaged real estate.

On July 31, 1930, the Bank was declared insolvent, and George H. Smith was appointed Receiver on August 7, 1930. Thereafter, on November 5, 1930, the Committee made another assessment of 25¼ per cent against the parties to the bondholders' agreement, which assessment the Receiver of the Bank refused to pay. The Bank then sought to repudiate the agreement of February 21, 1929, and to prove its claim against the sale-price of the property for its thirty-eight bonds, as a non-assenting bondholder. The Referee then, after hearing, entered the order being here reviewed. The Receiver of the Bank contends that the Committee had no authority under the terms of the agreement to buy the property free and discharged of liens, and that no act of the Receiver or the Bank could have ratified such purchase; and that in any event the Bank could withdraw from the agreement, upon forfeiture of the benefits and assessments paid in.

On the first proposition, we are unable to read the bondholders' agreement as to counsel for the Bank. As we construe the language of Paragraph 3 of the agree-

ment: "Bondholders have appointed and hereby do appoint Committee to represent them in the protection of their bonds for the purpose of realizing therefrom as much as possible, and if necessary *by acquiring title to the property subject to the lien of the indenture, * * *"* it merely means that the Committee may acquire the mortgaged property. It does not mean that it can only acquire it subject to the lien of the mortgage. Of course, if the bondholders buy, their mortgage-lien would merge in the purchase of the land. So we are unable to hold that the Committee bought the property in without authority. On the contrary, we are of the opinion the purchase was made in exact accord with the terms of the bondholders' agreement.

This view makes it unnecessary to consider whether the Bank ratified an unauthorized purchase of the mortgaged premises by the Bondholders' Committee. However, it should be noted that after the purchase by the Bondholders' Committee had been consummated, the Bank paid an assessment on December 17, 1929, to the Bondholders' Committee under the terms of the agreement.

■ On the third point raised by the Receiver of the Bank, our view is that he cannot now withdraw from the agreement after it had been executed by the purchase of the land by virtue of the authority given in the agreement. He cited Clause 6 of the Bondholders' Agreement for his authority to withdraw and to prove his claim as a non-assenting bondholder. This clause is as follows:

"6. Each bondholder will from time to time pay to Committee for expenses incurred in and about the accomplishment of the purposes hereof, and for the payment of costs and superior liens in the event that it becomes necessary to acquire the said property, such assessments as the Committee may from time to time deem it necessary to make. Any bondholder who fails to pay, within the time appointed therefor, any assessment made by the Committee, shall cease to be entitled to any rights hereunder, but the Committee may refund all or such part of any payment theretofore made by any bondholder who shall at any time become in default as it may deem proper, but there shall be no right to recover any such payment by a bondholder who may at any time become in default, except as the Committee may so direct."

In our opinion, this clause gives no right to the Receiver to withdraw from the agreement. It merely fixed the penalty for failing to pay the assessments, i. e., one who fails to pay assessments is not entitled to receive any benefits from the agreement.

■ The Receiver contends that the Bondholders' Committee agreement is an executory contract, as distinguished from an executed contract. This contention is not sound. When the Committee bought the mortgaged property at the Trustee's sale, the contract became an executed one. The Bank so regarded it, when it paid the assessment levied by the Committee on December 19, 1938.

The Referee's order will be confirmed and approved.